# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MARCUS DAWANELL CARLISLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-CV-00334 |
| ) | REEVES/SHIRLEY |
| STAFFING SOLUTIONS SOUTHEAST, INC. ) | |
| d/b/a PROLOGISTIX, and ) | |
| WACKER POLYSILICON, N.A., LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Marcus Dawanell Carlisle, acting *pro se*, has brought this action against his former employers alleging racial harassment and constructive discharge.

Pending before the court are the defendants' motions for judgment on the pleadings [R. 10, 25]. Because Carlisle has not alleged facts establishing a violation of Title VII, defendants' motions will be granted and this action dismissed in its entirety.

### I. Background

On May 7, 2014, Carlisle began working at Prologistix as a Logistics Operator at Wacker Polysilicon, located in Charleston, Tennessee. Carlisle is African-American. Carlisle states he received satisfactory performance evaluations and received no disciplinary actions during his employment. Prior to the incidents at issue, Carlisle was

aware of two individuals who were terminated by defendants for harassment in the workplace.

On February 9, 2015, a white male employee made a comment in the breakroom before shift that he disliked President Obama and "he can't wait until his sorry ass is out of office." Carlisle asked the employee to clarify what he meant when he said he disliked the President, and the employee replied that he "just didn't like him and didn't care anything for him." Carlisle states nothing further was said, but he was offended by the comments.

On February 10, 2015, while working near three white males, Carlisle overheard one of them say, "It's all good in the neighborhood." A second man replied, "It's all good in the 'hood,' as Marcus would say." This comment angered Carlisle, so he reported it to the warehouse supervisor, Bob McCay, along with the comments regarding President Obama. McCay told Carlisle he would take care of the matter and the incidents would be documented.

On February 11, 2015, Carlisle reported the comments to Elaine Creeden, Human Resource Manager. Creeden informed Carlisle she would be on site the following day to do an investigation and obtain written statements from the individuals. The next day, Creeden called Carlisle and reported that "none of the guys could remember the comment that Becker said about you; and if anything was said, that you probably took it the wrong way." She suggested that Carlisle "just let it go and put it behind you and continue to work with everyone up there as a team like before, so that things can go back to the way they

2

were before all this came about. We all have a good thing going with Wacker, let's not mess it up."

Carlisle states he returned to work on February 13, 2015, feeling mentally and emotionally depressed. After speaking to his supervisor, McCay, Carlisle clocked out and returned home. He notified Creeden via phone that it was "in the best of my interest to end my employment with the two companies out of fear for my safety and the possibility of retaliation from others." Carlisle states he was made to feel more like the problem instead of the victim.

Carlisle returned his ID badge, uniform, and miscellaneous work items to Creeden on February 16, 2015. Creeden provided him with a Notice of Separation which gave the reason for his termination as "Quit".

On May 25, 2015, Carlisle filed complaints against defendants with the Tennessee Human Rights Commission. On June 2, 2016, he received a Right to Sue letter from the EEOC. Carlisle filed the instant complaint on August 9, 2016.

Carlisle alleges defendants failed to prevent racial harassment in a hostile workplace after he reported the incidents concerning the alleged derogatory/stereotypical comments that were made in his presence, resulting in his constructive discharge.

## II. Motion for Judgment on the Pleadings

The defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Motions for judgment on the pleadings pursuant to Rule 12(c) are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* A pleading that merely offers "labels and conclusions," or a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). The court does not need to accept as true unwarranted inferences, unreasonable conclusions, or arguments. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009). Additionally, in reviewing a Rule 12(b)(6) motion to dismiss, a court may look to documents attached to the motion to dismiss that are integral to the complaint and authentic, and may also take judicial notice of matters of public record. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Although the court is obligated to liberally construe a *pro se* plaintiff's allegations, the court is not required to accept a *pro se* plaintiff's contentions as true, and cannot ignore a failure to allege facts which set forth a cognizable claim. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### III. Analysis

Defendants assert, even accepting all of Carlisle's factual allegations as true, the complaint fails to state a claim upon which relief can be granted. Specifically, defendants argue the alleged facts do not rise to the level necessary under controlling law to sustain claims for racial harassment and constructive discharge.

### A. Racial Harassment

Title VII clearly prohibits racial harassment that creates a hostile or abusive work

4

environment. *Newman v. Federal Exp. Corp.*, 266 F. 3d 401, 405 (6th Cir. 2001). To establish a case of hostile work environment based on race under Title VII, Carlisle must show: 1) he is a member of a protected class; 2) he was subjected to unwelcome racial harassment; 3) the harassment was based on race; 4) the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Id.*

In determining whether there was a hostile or abusive workplace environment, the court must look at the totality of the circumstances. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, (1993)). The court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788. Finally, the work environment must be both objectively and subjectively offensive. *Harris,* 510 U. S. at 21-22.

In this case, the plaintiff has alleged two incidents in support of his racial harassment claim: (1) a negative statement about President Obama made by a coworker on February 9, 2015; and (2) a statement made by a coworker on February 10, 2015, that "it's all good in the 'hood,' as Marcus would say."

5

After careful review of the pleadings, the court concludes that Carlisle cannot show that the comments made by his coworkers were severe or pervasive enough to create an intimidating, hostile, or offensive work environment. These comments may have been offensive to Carlisle, but taken in the context of the circumstances as a whole, do not rise to the level of severity necessary to amount to a change in the terms and conditions of his employment. Title VII was never intended to be a general civility code. *See Kelly v. Senior Centers,* 169 Fed. Appx. 423, 429 (6th Cir. 2006) (finding that use of the term "nigger," and "token black," coupled with three racist jokes did not create a hostile work environment). Moreover, numerous courts have held that comments about President Obama do not create a hostile work environment based on race. *See Lewis-Smith v. W. Ky. Univ.*, 85 F.Supp.3d 885 (W.D.Ky, 2015) (coworker's disrespect for President Obama did not suggest discrimination or harassment toward plaintiff); *Hall v. Lane*, 2014 WL 4925669 (M.D.La. Sept. 30, 2014); *Bright v. CCA*, 2013 WL 6047505 (S.D.Ind. Nov. 14, 2013). Based on this authority, the court agrees with defendants that Carlisle's alleged incidents of harassment do not rise to the level of actionable illegal harassment. Accordingly, the court finds that Carlisle has failed to state a claim for harassment/hostile work environment, and defendants' motions to dismiss this claim will be granted.

**B.  Constructive Discharge**

Carlisle alleges he was dissatisfied with defendants' handling of the investigation of his complaint, and that resulted in him experiencing emotional distress. To establish a claim of constructive discharge, Carlisle must show (1) the employer deliberately created working conditions which a reasonable employee standing in the plaintiff's shoes would

find so intolerable that he would have felt compelled to resign, and (2) the employer did so intending to force the plaintiff to quit his job. *Logan v. Denny's, Inc.,* 259 F.3d 558, 566-69 (6th Cir. 2001). The Sixth Circuit has adopted a multi-factor test to assist in the determination of whether working conditions were objectively intolerable:

> Whether a reasonable person would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Ross v. Pfizer, Inc.,* 375 Fed. Appx. 450, 457 (6th Cir. 2010).

Considering the totality of the circumstances, the court concludes Carlisle has failed to demonstrate that working conditions at Wacker were so intolerable that a reasonable employee in his position would have felt compelled to resign. Carlisle does not allege that he suffered any of the referenced adverse actions. One or two comments, arguably racially insensitive, do not result in a work environment that is so intolerable that it would force any reasonable employee to resign. The fact that Carlisle subjectively felt he could not continue his employment under those conditions is irrelevant to the court's analysis. *See Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 479 (6th Cir. 2002) ("hurt feelings are not enough to create a case of constructive discharge); *Walsh v. State of* Ohio, 2000 WL 1456966 at *6 (S.D. Ohio Sept. 26, 2000) (plaintiff's subjective impression of the impact of the job action is insufficient). Accordingly, the court finds that Carlisle has failed

7

to state a claim for constructive discharge, and defendants' motions to dismiss this claim will be granted.

## C. TDOL Decision

In an effort to establish his claims, Carlisle has submitted documents from the Tennessee Department of Employment Security awarding him unemployment benefits. However, under Tennessee Code Annotated § 50-7-304(k), unemployment claims are not to be considered in any other action:

> No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum . . . regardless of whether the prior action was between the same or related parties or involved the same facts.

The Sixth Circuit Court of Appeals has interpreted the Tennessee statute to mean that decisions of the Tennessee Department of Employment Security cannot be used in civil cases because they are the result of "quick and inexpensive hearings with different standards of proof than civil trials. As a result, an unemployment hearing officer's decision should not be admitted in an employment discrimination suit." *Fleming v. Sharp Mfg. Co. of Amer.*, 2012 WL 3049624 at *5 (W.D. Tenn. Jul. 25, 2012); *see also Reed v. Intermodal Logistics Serv. LLC,* 2011 WL 4565450 (W.D. Tenn. Sept. 29, 2011); *Wright v. Columbia Sussex Corp.*, 2008 WL 972699 (E.D. Tenn. Apr. 7, 2008).

Based on this authority, the court finds that the Tennessee Department of Employment Security decision submitted by Carlisle is not relevant, and therefore not admissible. As such, the decision may not be considered in connection with Carlisle's opposition to defendants' motions. A party opposing a dispositive motion cannot meet the

burden of coming forward with relevant evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. *See Sperle v. Michigan Dept. of Corr.,* 297 F.3d 483,495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use inadmissible evidence to create a genuine issue of material fact"). Because Carlisle has failed to allege facts establishing that he is entitled to relief for alleged violations of Title VII, the complaint against the defendants must be dismissed.

### III. Conclusion

In light of the foregoing discussion, the following action is taken:

1. Wacker Polysilicon's motion for judgment on the pleadings [R. 10] is **GRANTED.**

2. Staffing Solutions' motion for judgment on the pleadings [R. 25] is **GRANTED.**

3. This action is **DISMISSED in its entirety, with prejudice.**

_____
**UNITED STATES DISTRICT JUDGE**